# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SAID SAMAAN,

    Plaintiff,

                                    Case No. 11-13869

v.

                                HONORABLE DENISE PAGE HOOD

GENERAL DYNAMICS LAND
SYSTEMS, INC.,

    Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION TO
## REMOVE MATTER FROM ARBITRATION

**I.    BACKGROUND/FACTS**

On May 31, 2012, an Order was entered granting Defendant's Motion to Dismiss the matter to proceed with arbitration, in light of the parties' agreement to arbitrate the matter. (Doc. No. 14) The action before the Court was dismissed and closed, but the Court retained jurisdiction to confirm, vacate or correct any arbitration award issued. The matter thereafter proceeded to arbitration, but no arbitration award has been issued.

Plaintiff, proceeding *pro se*[1], filed the instant motion asserting that the arbitration cannot resolve all the issues he wants to raise. This matter is before the Court on Plaintiff Said Samaan's Motion to Remove Matter from Arbitration. Defendant General Dynamics Land Systems, Inc. opposes the motion.

## II.  ANALYSIS

The original Qui Tam Complaint was filed under seal on September 26, 2011 by Plaintiff Said Samaan under the False Claims Act, 31 U.S.C. §§ 3729-3733 and the Michigan Whistleblowers' Act, M.C.L. § 15.361 *et seq.* An Amended Complaint was filed on January 4, 2012, deleting the False Claims Act claim and the matter was unsealed on February 6, 2012. The Amended Complaint alleges the following counts: Retaliatory Discharge of Plaintiff in Violation of 31 U.S.C. § 3730(h) (Count I); Michigan Whistleblowers' Protection Act, M.C.L. §§ 15 and 15.362 (Count II); Retaliation in Violation of Michigan Public Policy (Count III); Violation of Employment Age Discrimination Laws, 29 U.S.C. § 621 *et seq.* and Elliot-Larsen Act, M.C.L. § 37.2102 *et seq.* (Count IV).

Samaan was employed by General Dynamics from February 22, 1977 until June 2011 as a Senior Engineering Specialist. (Am. Comp., ¶¶ 4, 6) Samaan asserts

---

[1] Plaintiff's counsel of record is James C. Klemanski. He may have withdrawn from representing Plaintiff during arbitration, but no order has been entered withdrawing Mr. Klemanski as counsel for Plaintiff on the Court's docket.

that General Dynamics had filed false claims against the U.S. Army, making misrepresentations regarding results from shock and vibration testing. (Am. Comp., ¶ 7) Samaan made repeated objections to General Dynamics and demanded that General Dynamics provide refunds to the U.S. Army for the fraudulent testing and misrepresentations. (Am. Comp., ¶ 7) Samaan claims General Dynamics retaliated against him for his efforts to correct the false claims by suspending and subsequently terminating Samaan with a younger, less experienced person. (Am. Comp., ¶ 8)

After objecting to the use of improper tests which failed to comply with the U.S. Army's standards, Samaan filed a formal claim of data misrepresentation, fraud and retaliation to General Dynamic's Human Resources Department in the fall of 2010. (Am. Comp., ¶ 40) Samaan's objections continued to be ignored. (Am. Comp., ¶ 41) In early 2011, Samaan asserts he began experiencing severe retaliation for his complaints. (Am. Comp., ¶ 43) Samaan received poor performance evaluations in January 2011, including only "satisfactory" in certain areas and "failure" in other areas, the lowest evaluation he had received in thirty-four years of employment. (Am. Comp., ¶ 44) Samaan asserts he was told that his job performance reviews would improve if he would "forget" about the testing misrepresentation and fraud claims he has raised. (Am. Comp., ¶ 45)

Samaan continued to raise the fraud issues, which was referred to by the

President of General Dynamics to the General Counsel in March 2011, who found no issues with General Dynamic's actions. (Am. Comp., ¶¶ 48-50) In May and June 2011, Samaan contacted the U.S. Army's Aberdeen Test Center ("ATC") and reported his concerns. (Am. Comp., ¶ 51) The liaison for the contract confirmed to Samaan that the testing methods and standards were invalid and not according to the contractual military standard. (Am. Comp., ¶ 53) Samaan immediately contacted various General Dynamics personnel, including a manager, a director and the General Counsel, informing them that the liaison concurred with Samaan's claims. (Am. Comp., ¶ 54) The U.S. Army's Tank Automotive Command ("TACOM") launched an investigation based on Samaan's complaints in June 2011. (Am. Comp., ¶ 55) General Dynamics increased the harassment and retaliation against Samaan. (Am. Comp., ¶ 56) Human Resources contacted Samaan on June 9, 2011 demanding to know why Samaan had contacted the ATC and was placed on indefinite suspension without pay pending further investigation. (Am. Comp., ¶ 57) Samaan was notified on June 20, 2011 that Human Resources would be recommending termination. (Am. Comp., ¶ 59) Samaan felt compelled to resign on July 1, 2011 because of Samaan's fear of serious financial harm that would result from termination. (Am. Comp., ¶ 60)

As noted above, the parties agreed to arbitrate the matter, but now Samaan seeks to remove the matter from arbitration. General Dynamics opposes the motion.

## II.  ANALYSIS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2 states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . ., or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Section 1 of the FAA provides the sole exception to the enforceability of arbitration agreements–that Section 2 "shall [not] apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; *See, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).

The Sixth Circuit has reiterated the strong presumption in favor of arbitration on more than one occasion. *See, e.g., Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2001) (stating that the FAA promotes a "strong federal policy in favor of arbitration" and "was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with speedier and less costly alternative litigation"); *Haskins*, 230 F.3d at 235 ("[T]here is 'a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.'"); *Willis v. Dean Witter Reynolds Inc.*, 948 F.2d

305, 311 (6th Cir. 1991) ("Congress passed the FAA to ensure that courts honor the contractual agreement of parties who choose to resolve their disputes by arbitration."). The Sixth Circuit stated that "[c]ourts are to examine the language of the [Arbitration Agreement] in light of the strong federal policy in favor of arbitration." *Stout*, 228 F.3d at 714. Further, "any ambiguities in the [Arbitration Agreement] or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*.

Courts have repeatedly applied the same principles governing arbitrability of agreements between an employer and employee to arbitrate employment-related disputes, finding such agreements are enforceable. *Gilmer,* 500 U.S. at 20, 26, 31 (an employment discrimination claim under the ADEA); *Mazera v. Varsity Ford Management Services, LLC,* 565 F.3d 997 (6th Cir. 2009).

In deciding whether to compel arbitration of a federal statutory claim, a court initially considers whether the statutory claim is generally subject to compulsory arbitration. *Floss v. Ryan Family Steak House*, 211 F.3d 306, 311 (6th Cir. 2000). If the statutory claim is not exempt from mandatory arbitration, the court next considers whether the parties have executed a valid arbitration agreement and, if so, whether the statutory claim falls within the scope of that agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (stating that

courts should consider whether the parties have agreed to arbitrate a federal statutory claim and whether that claim is generally subject to compulsory arbitration). Once it has been determined that a statutory claim falls within the scope of the arbitration agreement, it is be enforced absent a showing of fraud, duress, mistake, or some other ground upon which a contract may be voided. *See Haskins v. Prudential Ins. Co. of Am.*, 230 F.3d 231, 239 (6th Cir. 2000); *Beauchamp v. Great West Life Assur. Co.*, 918 F. Supp. 1091, 1098 (E.D. Mich. 1996).

In this case, the parties agreed to arbitrate the matter and have proceeded to such. The Court's order indicates it will retain jurisdiction for the purpose of confirming, vacating or correcting any Arbitration award or to enforce the parties' arbitration agreement under 9 U.S.C. §§ 1-16. Since there is no award yet, the Court does not have jurisdiction to review Plaintiff's request, as stated in the Order. Plaintiff has not submitted any support for his request to remove the matter from an agreed-to arbitration. The FAA only provides that the Court has jurisdiction to review an award or enforce the agreement to arbitrate, not to remove the matter from Arbitration once the parties proceed to such. The Court has no authority to review the merits of the issues before the arbitrator.

**III. CONCLUSION**

For the reasons set forth above,

IT IS ORDERED that Plaintiff's Motion to Remove Matter from Arbitration **(Doc. No. 15)** is DENIED.

S/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 29, 2014

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 29, 2014, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager